# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

ROY DEAN THRELKEL                                                                     PLAINTIFF

VERSUS                                     CIVIL ACTION NO. 1:11cv39-HSO-JMR

MIKE BYRD, SHERIFF OF JACKSON
COUNTY; and KEN BROADUS, DIRECTOR
OF THE JACKSON COUNTY ADULT
DETENTION CENTER                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court pursuant to Defendants' Motion for Summary Judgment [33] filed in this case. The Court, being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, and pursuant to the authority granted by the order of reference in this case [32], finds as follows.

## STATEMENT OF THE CASE

The Plaintiff, Roy Dean Threlkel [Threlkel], filed this *pro se* Complaint on February 3, 2011, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while lawfully incarcerated for a probation violation in the Jackson County Adult Detention Center [JCADC] during January 2011. Specifically, Plaintiff alleges that he was subjected to excessive force in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishment Clause, and deliberate indifference to a serious medical need. [10.] Threlkel asserts that Defendants Mike Byrd [Byrd] and Ken Broadus [Broadus] are liable for failing to properly train the employees at the JCADC and for refusing medical treatment as requested by Threlkel. (*Id.*, p. 2.)

Threlkel was booked into the JCADC on December 23, 2010, for a probation violation. [33-1.] An order of revocation was entered on February 9, 2011, in which Threlkel's probation was revoked and he was sentenced to serve the remainder of the five (5) year prison term

following violation of the conditions of his post release supervision. [33-3.] Threlkel was released from the JCADC into the custody of the Harrison County Sheriff's Department on February 25, 2011. [33-5.]

On January 7, 2011, Threlkel was housed in cell block O-E of the JCADC when Byrd and Broadus determined that a shakedown of the O-E cell block was necessary to check for weapons and other contraband. [33-7, p. 1.] The Defendants assert that the shakedown was required because of gang related behavior, disruptive behavior and "a change in attitudes in said cell block." (*Id.*) The Emergency Services Unit [ESU] utilized a "flash bang", a pyrotechnic distraction device, to "make entry into the cell block as a surprise tactic in an effort to keep both officers and inmates safe." (*Id.*) Razor blades and medications were confiscated during the raid. (*Id.*)

Threlkel claims that his ear drum was damaged and that his ears bled and rang for more than a month following the January 2011 incident. [Doc. 10, p. 2] He asserts that he was not taken for medical treatment after the incident although he alleges that he asked several times for treatment. (*Id.*) The Defendants present a grievance form dated January 8, 2011, filled out by Threlkel in which he provides that he was standing about 5 feet from the explosion of the grenade and his right ear drum was damaged as a result. [38-1.] The response, dated January 10, 2011, provides that the ear was examined and the ear drum was not found to be ruptured. (*Id.*) Following a request dated January 10, 2011, in which Threlkel seeks medical treatment for his ear, the responses indicate that a doctor appointment was set for Threlkel. [38-2, 38-3.] On January 25, 2011, Threlkel seeks information on the date of his doctor appointment, and the response provides "see nurse on rounds." [ 38-4.] According to Jona Crowley, a nurse employed

2

by the Jackson County Sheriff's Department at the JCADC, Threlkel was treated on January 5, 2011, for an ear infection. [38-5.] She avers that he received medication for the ear infection through January 14, 2011. (*Id*.) She states that she completed the grievance response dated January 10 and following examination of Threlkel's ear, did not find a ruptured ear drum. [38-1.]

Threlkel asserts that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was allegedly assaulted in the use of the flash grenade. [1, 10.] He also contends that his Eighth Amendment right to reasonable medical care was violated when the Defendants were indifferent to his medical needs. [10.]

The Defendants assert that there is no custom, policy or practice in place which resulted in the alleged violation of Threlkel's constitutional rights. [34, pp. 9, 11.] In addition, the Defendants maintain that Threlkel was not refused medical treatment. [34, p. 1.] The Defendants argue that Threlkel was examined by the nurse and nothing medically serious was found in the examination. (*Id*.) He was transferred out of the facility before he could see a doctor. (*Id*., p. 11.) The Defendants state that unsuccessful medial treatment, negligence, neglect and disagreement with medical treatment do not rise to the level of a constitutional violation. (*Id*., p. 12.) Finally, the Defendants argue that if they are sued in their individual capacities that they are entitled to qualified immunity. (*Id*.) The Defendants also assert that they are exempt from liability for any state law claims which may be asserted in the complaint. (*Id*., p. 14.)

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, it is well settled in this circuit that bare allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes. *Stafford v. True Temper Sports*, 123 F.3d 291, 295 -6 (5th Cir. 1997).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson*, 477 U.S. at 247-48. To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *Whitt v. Stephens County*, 529 F.3d 278, 283 n.8 (5th Cir. 2008).

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981), *cert. denied* 455 U.S. 1027 (1982).

## ANALYSIS

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability under section 1983 against a governmental agency requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject supervisors liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. An official policy is necessary as a predicate to recovery under a theory of municipal liability:

> Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Kohler v. Englade,* 470 F.3d 1104, 1115 (5th Cir. 2006).

5

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264.

The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999); *see Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

I. <u>Excessive Force and Inadequate Training</u>

   A. <u>Inadequate Training Claim</u>

A municipality's failure to properly train or supervise its employees can be a policy or custom giving rise to § 1983 liability. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009); *see City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Therefore, Threlkel must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the

constitutional deprivation. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010), *cert. denied* ___U.S.___, 131 S.Ct. 3059 (2011). For liability to attach based on an "inadequate training" claim, Threlkel must specifically allege how a particular training program is defective or inadequate. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).

According to Threlkel, Byrd "is responsible for his employees" and allows these employees to "assault prisoners at will." [8, p. 1.] He also asserts that Broadus and Byrd were present at the time the flash grenade was used in the cell block. [10, p. 2.] Threlkel maintains that his ear drum was damaged in the raid. (*Id.*) Threlkel has not filed a response to the summary judgment motion. (Ct. R.)

Threlkel has not provided any evidence of a policy of inadequate training, use of flash grenade, denial of medical treatment or supervisory practices followed or implemented by the Defendants at the JCADC. (Ct. R.) He merely asserts that because the flash bomb was detonated in the day room, his eardrum burst and the hiring, training, and supervising of jail employees must have been deficient and deliberately indifferent to his constitutional protections. For a claim to survive summary judgment, specific facts concerning the adequacy of the training program must be presented, mere inferences are not enough. Further, there is no pattern of past incidents involving the misuse of flash-bang devices necessary to support a finding of deliberate indifference on behalf of the Defendants. These elements must be proven with specific, concrete facts, for a supervisor cannot be held liable under a theory of *respondeat superior* for any negligent acts of his employees in a § 1983 claim. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. denied* 506 U.S. 973. Accordingly, the Court finds that the Defendants are entitled to summary judgment on any claim of inadequate training.

B. <u>Excessive Force</u>

To prevail on an Eighth Amendment excessive force claim, Threlkel must prove not only that the assault actually occurred but also that it was carried out "maliciously and sadistically" rather than as part of "a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, 1180 (2010). "The amount of force that is constitutionally permissible . .. must be judged by the context in which that force is deployed." *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996).

Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include the following factors:

1. the extent of the injury suffered;
2. the need for the application of force;
3. the relationship between the need and the amount of force used;
4. the threat reasonably perceived by the responsible officials; and
5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

The finder of fact must keep in mind that prison officials "may have had to act quickly and decisively." *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir. 1993), *cert denied* 509 U.S. 905. To determine whether the force used to effect a particular seizure is reasonable, we balance the nature and quality of the intrusion on the individual's rights against the "countervailing governmental interests at stake." *See Graham*, 490 U.S. at 395. "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the *core judicial inquiry* is ... whether force was applied in a *good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.*" *Hudson v.*

8

*McMillian,* 503 U.S. 1, 7 (1992) (emphasis added).

In this case, Broadus submitted an incident report in which he states that he spoke with Byrd regarding concerns about gang related violent behavior and the need to search for weapons in the O-E dayroom. [33-6.] Captain Craig Douglas [Douglas], with the ESU, was contacted to search the area. (*Id*.) Broadus indicates the following occurred:

> The standard procedure was followed. The main door was opened, a flash bang grenade utilized, and the entry team performed a dynamic entry and secured the dayroom without incident.

(*Id*.)

Broadus also submitted an affidavit in which he states that the shakedown resulted in the seizure of several razor blades and that the grenade was used to make entry into the cell block a surprise, and to keep the officers and inmates safe. [33-7, p. 1.] In a report prepared by Douglas, he stated that Byrd and Broadus ordered that he assist in a "correctional tactical operation" at the JCADC. [33-8.] Broadus said that the dayroom in the O-E unit was becoming increasingly violent toward staff and other inmates who did not share a common gang affiliation with several of the inmates housed in that unit. (*Id*.) Broadus also indicated that the B-E dayroom was full of "increasingly violent offenders." (*Id*.) Broadus wanted both dayrooms searched for contraband and weapons, and the ESU was needed to help due to the numbers of inmates involved and the need for tactical expertise. (*Id*.)

Douglas stated that after assessing the situation in the O-E unit, he decided to use a pyrotechnic distraction device because of the overwhelming odds against the ESU staff. (*Id*.) Douglas states he threw the device into an open area on the floor of the dayroom, and that the ESU entered the area and cleared each cell of inmates. (*Id*., p. 2.) The use of the device allowed

9

the officers to enter the unit with no resistance from the inmates. (*Id.*)

A good faith effort to maintain or restore discipline in a prison setting which was assessed as a highly volatile and potentially dangerous situation, and the use of the device was not intended to maliciously and sadistically cause harm. The evidence before the court reflects that Douglas reasonably perceived a serious threat from the inmates given the size of the groups, their demeanor, and the fact that they were armed with makeshift weapons. The wide-ranging deference afforded to prison officials in adopting and executing policies and procedures necessary to preserve internal order and discipline "extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley v. Albers,* 475 U.S. 312, 321–2 (1986).

Other than Plaintiff's allegations, there is no evidence that the Defendants maliciously and sadistically fired the grenade to cause Threlkel harm. There is no evidence that Defendant intended to single out any particular inmate at all; rather, the device was shot at the center of the group of inmates. The Court concludes that a reasonable person in Douglas' situation would have believed that his conduct conformed to the constitutional standard set forth above. *See Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

Whether Byrd or Broadus may be held liable under § 1983 depends on whether these Defendants (1) affirmatively participated in acts that caused the constitutional deprivation, or (2) implemented unconstitutional policies that causally resulted in Threlkel's injury. *See Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997); *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir. 2008). Douglas stated that he determined that the

10

use of the grenade was appropriate under the circumstances, and Threlkel presents no evidence to refute this information or to establish that either Byrd or Broadus participated in the entry of the dayroom or enacted policies which would result in constitutional deprivations. Accordingly, the Court finds that the Defendants' motion for summary judgment on Threlkel's excessive force claim should be granted. *See Black v. Warren,* 134 F.3d 732, 733–4 (5th Cir. 1998).

II.     Deliberate Indifference to Serious Medical Need

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.' " *Farmer,* 511 U.S. at 847; *see also Reeves v. Collins,* 27 F.3d 174, 176-77 (5th Cir. 1994). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006). Unsuccessful medical or negligent medical treatment and medical malpractice, if any, do not constitute deliberate indifference, nor does a prisoner's disagreement with their medical treatment, absent exceptional circumstances. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Rather, a prison inmate can demonstrate an Eighth Amendment violation by showing that "prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Sama v. Hannigan,* 669 F.3d 585, 590 (5th Cir. 2012).

Threlkel contends that Broadus was the "jail supervisor" in charge when the assaults took place, and he allegedly refused medical treatment to Threlkel and ignored requests for medical

11

treatment. [8, p. 1.] The facts before the Court establish that a doctor's appointment was set for Threlkel, and that the nurse examined him shortly after the incident and following his complaints about his ear, and no rupture was discovered at the time of the examination. Although Threlkel was transferred to another facility before he could be seen by a doctor, this is not sufficient to establish a viable section 1983 claim against these Defendants. Threlkel must produce evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wonton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). The evidence does not show that his complaints were ignored or disregarded.

Threlkel failed to establish: (I) deliberate indifference on the part of either of the defendants; and (ii) any resulting substantial harm occasioned by the delay. *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993). The Court concludes that the Defendants' motion for summary judgment on Threlkel's claim of deliberate indifference to a serious medical need brought pursuant to section 1983.

III.  State Law Claims

The Defendants, in their official capacity, argue that MISS. CODE ANN. § 11-46-9 (1972) bars any recovery Threlkel may seek under Mississippi law. Under that act, a governmental entity is not liable to any claimant who, at the time the claim arises, is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution regardless of whether the claimant is or is not an inmate when the actual claim is filed. The Court agrees with the Defendants and finds that any claims Threlkel raises under Mississippi State law against the Defendants in their official capacity are barred by provisions of the Mississippi Tort Claims Act.

12

IV.     Qualified Immunity

Based on the foregoing analysis, the Court finds that Threlkel's Complaint fails to establish that a policy or custom on the part of the JCADC was the moving force behind any alleged constitutional violations. Furthermore, this Court finds that Threlkel's allegations do not indicate that he faced a substantial risk of serious harm to which Defendants responded with deliberate indifference. Thus, there exists no basis for Threlkel's claims against the Defendants in their official capacities.

The Court will construe Threlkel's Complaint as asserting claims against Defendants in their individual capacities. However, because Defendants are law enforcement officials, they are entitled to the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986), *cert denied* 483 U.S. 1021 (1987). In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

As discussed above, the Court finds that Threlkel has not alleged sufficient facts to create a genuine issue as to whether he was subjected to excessive force at the hands of HCADC employees. Therefore, the Court must determine whether Defendants' conduct was objectively reasonable in light of clearly established law at that time. *Salas v. Carpenter*, 980 F.2d 299, 305-6 (5th Cir. 1992). Objective reasonableness analysis focuses on whether a reasonable person

would have believed his conduct was constitutional in light of the information available to him and the clearly established law. *See Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, even officials who reasonably but mistakenly violate the Constitution are entitled to immunity. *Id.*

Accordingly, the Court finds that the Defendants acted with objective reasonableness under the circumstances the officers faced at the JCADC on the date in question. The Court, therefore, concludes that Byrd and Broadus are entitled to qualified immunity in this case and that the Defendants' motion for summary judgment on any claims advanced against them in their individual capacities should be granted.

## CONCLUSION

Pursuant to the foregoing analysis, this Court finds that the Plaintiff has not presented any facts that create a genuine issue of material fact with regard to the Defendants' official or individual liability for a violation of the Plaintiff's constitutional or state law rights. Accordingly, the Court finds that the Defendants' Motion [33] for Summary Judgment should be granted as to all of the Plaintiff's claims and that all claims against all Defendants should be dismissed with prejudice.

SO ORDERED, this the  7th   day of August, 2012.

                                                 s/ John M. Roper, Sr.
                                       CHIEF UNITED STATES MAGISTRATE JUDGE